# EXHIBIT C

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| EDELMAN FAMILY CO. LLC, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 2021-0626-JTL |
| | ) |
| DURST BUILDINGS CORPORATION, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| and | ) |
| | ) |
| ARTEMUS USA LLC, | ) |
| | ) |
| Nominal Respondent. | ) |

### PETITIONER'S RESPONSE TO RESPONDENT'S OBJECTION TO PLAN OF LIQUIDATION

Petitioner Edelman Family Co. LLC ("Petitioner" or "Edelman Co."), by and through its undersigned counsel, hereby responds to the objection ("Respondent's Objection") to the Plan of Liquidation (the "Plan") proposed by the Liquidating Trustee (the "Trustee"), filed by respondent Durst Buildings Corporation ("Respondent" or "Durst") and states as follows:

**I.    Introduction.**

1.     As it has done consistently in response to Edelman Co.'s efforts to effectuate an orderly dissolution of Artemus USA LLC ("Artemus" or the "Company"), respondent Durst spends the bulk of Respondent's Objection

1

attempting to publicly smear Edelman Co. and Asher Edelman, going as far as to blame Edelman Co. for Durst's legally infirm attempt to dissolve the Company in New York and even attaching papers from a completely unrelated matter. Not only is Durst's attack on Edelman unseemly and unfortunate; it is completely irrelevant to the only matter before the Court: whether to approve the Trustee's Plan.

2. Stripped of its vindictive personal attacks and intentionally misleading insinuations, Respondent's Objection reduces to two substantive points: (a) the Company's assets should be liquidated and used to pay off its liabilities, and (b) the Company should no longer shoulder the expense of various lawsuits to which it is a party (the "Litigation"). Petitioner does not disagree with Respondent on these two core points. Indeed, they are consistent with the Stipulation and Order Dissolving Artemus USA LLC (the "Stipulated Order") and the Trustee's Plan.

3. Given the parties' apparent agreement on core terms, Petitioner respectfully requests that the Trustee be directed to (a) pay off the Small Business Loan (the "SBA Loan"), which is a perquisite to liquidating the Company's artwork, (b) sell the Company's artwork at auction as soon as practicable, (c) pay the Company's liabilities (including the attorneys' fees and expenses it owes and Edelman Co. and affiliates' indemnification and

reimbursement claims), (d) distribute any remaining cash to Durst in accordance with the Operating Agreement, and (e) allow Edelman Co. to retain and maintain the Litigation at its expense going forward.

4.    Finally, Durst's demand that the Trustee dissipate the Company's sparse remaining assets in pursuit of purported claims against Edelman Co. not only lacks factual and legal bases; it is contrary to the Trustee's determination, reflected in the Plan, that such a course of action would not maximize value to the Company's members.  Tellingly, Respondent's Objection makes no attempt to argue that the Trustee's recommendation was the product of bad faith or an irrational "approach to maximizing value returned to the Members". Order ¶ 16.  Durst's myopic (and frankly bizarre) fixation on dragging Petitioner through the mud is not a basis to reject the Trustee's determination.

## II.    The Court Should Approve the Liquidation of the Company's Artwork and Satisfaction of Liabilities.

5.    The parties agree on the core terms of the liquidation.  In the Stipulated Order, the parties agreed (and the Court ordered) that the Trustee would develop "a written plan to liquidate the Company's non-cash assets … including, without limitation, artwork, personal property, accounts receivable, judgments, and litigation claims." Order ¶ 4.  The Stipulated Order further provides that the proceeds from the liquidation be distributed (among other

3

things) "to known creditors in satisfaction of any Claims brought before the Claim Deadline, including but not limited to any timely Claim asserted by a Member for indemnification or reimbursement." *Id.* ¶ 15.[1]

6. Respondent's Objection is consistent with the Stipulated Order with respect to the core terms of liquidation. Durst requests (among other things) that the Trustee (a) pay off the SBA Loan, (b) "efficiently auction and liquidate the Company's artwork assets", and (c) use the proceeds to pay the Company's creditors. Respondent's Objection ¶ 11.

7. Petitioner agrees with this basic course of conduct. The Trustee agrees as well. Plan at pages 17-21. Accordingly, Petitioner respectfully requests that the Trustee be permitted to pay off the SBA Loan, sell the Company's artwork as soon as possible and use the proceeds to satisfy the Company's liabilities.[2]

---

[1] The terms "Claims" and "Claims Deadline" are not defined in the Stipulated Order, nor is the procedure for submitting Claims specified. Nevertheless, Petitioner respectfully submits that, through his investigation, the Trustee has identified all relevant liabilities of the Company.

[2] Durst argues that the Trustee should be ordered to disregard the Company's outstanding legal bills. *See* Respondent's Objection ¶ 9. While Edelman Co. does not oppose the Trustee attempting to negotiate reasonable reductions in amounts owed to various law firms, it disagrees with Durst that the Trustee has a duty to simply ignore the Company's outstanding legal bills. In any event, Durst fails to meet the requisite burden under the Stipulated Order for overcoming the Trustee's good-faith determination that the Company should honor its obligations to its law firms. Stipulated Order ¶ 16.

### III. The Court Should Permit the Trustee to Assign the Litigation to Edelman Co.

8. In Respondent's Objection, Durst acknowledges that it "has no interest in bidding on the [Litigation]."[3] Respondent's Objection ¶ 7. Contrary to Durst's assertion (*id.* ¶ 8), Edelman Co. *is* willing to assume responsibility for the Litigation, along with the benefits of any recovery (except for a fee award obtained by the Company, 20% of which Edelman would provide to Durst, consistent with the Plan (Plan at page 17)).[4] Edelman Co. is also willing to shoulder the cost of the Litigation going forward[5] and be responsible for any liability that the Company might incur through any adverse rulings.

9. This approach is consistent with the Trustee's proposed modified Vickering auction. Plan at pages 16-17. Once again, Durst does not even

---

[3] As part of its public smear campaign, Durst accuses Petitioner of making "knowingly false" representations about the value of the Litigation. Respondent's Objection at ¶ 8. As Durst well knows, this accusation is contrary to fact (i.e., knowingly false). First, Artemus was sued in the most substantial Litigation – the *Shagolov* case – and thus had no choice but to defend and assert counterclaims. Plan at page 10. Moreover, the Company has been successful in nearly all the Litigation. *Id.* at pages 9-13.

[4] Edelman Co. is only willing to share 20% of any recovered fees *paid by the Company*, not recovery of fees paid by Edelman Co. after it assumes responsibility for funding the Litigation.

[5] Edelman Co.'s offer to assume control of the Litigation is contingent upon all fees and expenses incurred to-date being paid by the Company.

5

attempt to argue that the Trustee reached this recommended approach in bad faith or irrationally. Stipulated Order ¶ 16.  Because Durst has declined to bid on the Litigation[6] and failed to offer grounds to reject the Trustee's proposed solution, the Court should allow Edelman to assume control of the Litigation once the Company's obligations to its lawyers have been satisfied.[7]

IV. **Durst's Vindictive Attempts to Smear Edelman Co. is as Meritless as its Objections to the Plan.**

10. Respondent's Objection is littered with gratuitous attacks on Edelman Co. and Asher Edelman personally.  This unseemly conduct began with Durst's New York dissolution petition, which was withdrawn, refiled and ultimately dismissed for (obvious) lack of subject matter jurisdiction.  *See* Ex.s D & E to Respondent's Objection.  Durst continues its public assault on Petitioner in Respondent's Objections.  Not only are Durst's personal attacks premised on fallacies; as with each of Durst's objections to the Plan, they are also legally meaningless.

---

[6] To the extent that a bid from Edelman Co. is deemed required, Edelman Co. is prepared to submit a nominal one.

[7] In order to maintain claims on behalf of the Company, it would be necessary for Edelman Co. to continue Artemus' corporate existence during the pendency of the Litigation.  This could be accomplished by an assignment of Durst's membership interest to Edelman Co. during the liquidation, resulting in Edelman Co. owning 100% of the Company.

11. As an initial matter, Durst's claim for indemnity for fees and expenses incurred in *unsuccessfully* pursuing dissolution in New York borders on frivolous. As Respondent implicitly acknowledges, Durst filed the New York action while Edelman Co. was in the process of winding down the Company. *See* Respondent's Objection ¶ 13 (inaccurately accusing Edelman Co. of "failing to *substantially* comply" with Durst's demand for dissolution) (emphasis supplied). After once voluntarily dismissing its initial New York petition, Durst insisted on refiling that action despite the obvious lack of subject matter jurisdiction in New York. Durst's meritless New York filings caused both parties needlessly to incur legal fees and expenses in a case that never should have been brought. The only party entitled to indemnification for the New York action under Section 16 of the Company's Operating Agreement is Edelman Co., who was forced to defend that action as the Manager of Artemus.

12. Similarly without merit is Durst's demand that the Trustee "fully investigate and prosecute the potential claims the Trustee acknowledged against [Edelman Co.]." Respondent's Objection at page 2. In its objection to the Plan (Dkt. 17), Edelman Co. demonstrated that the Trustee's speculations with respect to potential claims against Edelman Co. lack a factual basis. Edelman Co. Objection at ¶¶ 2-17. In addition, the Trustee determined that

7

investigating or pursuing claims against Edelman Co. was unwarranted. Plan at page 15. Once again, Durst fails even to attempt to show that the Trustee's determination was reached in bad faith or represents an irrational "approach to maximizing the value returned to the Members." Stipulated Order at ¶ 16. Indeed, the Trustee's decision was the only rational one, given (a) the lack of any factual basis upon which to pursue claims against Edelman Co. or its affiliates, (b) the drain on the Company's sparse resources this would entail, and (c) the exculpation, indemnification and advancement rights afforded Edelman Co. under the Company's Operating Agreement (Ex. A to Edelman Affidavit at ¶¶ 16-17). Durst's objection to the Plan based upon the Trustee's decision not to investigate or pursue claims against Edelman Co. should summarily be rejected as wholly without merit.

13. In a further attempt to malign Edelman Co., Durst attempts to imply wrongdoing by Petitioner by misleadingly quoting the Trustee out of context. *See* Respondent's Objection at ¶ 3 (selectively quoting Plan at page 7 for the proposition, "[a]s the Trustee acknowledged in the Plan, Edelman has been the Company's sole Manager controlling the Company, with 'non-Manager' Durst having a 'lack of sufficient information'"). As Respondent well knows (but fails to inform the Court), Durst was contractually obligated to maintain the Company's financial records under the Artemus Operating

8

Agreement. Edelman Affidvait Ex. A at § 16. Moreover, Durst directly participated in numerous Artemus business dealings, including the application process for the SBA Loan and another loan from a European bank, through which Durst had complete access to information regarding the Company's finances. Durst's selective quotations from the Plan, combined with the failure to disclose the fact that it was responsible for the Company's financials, appear to be an intentional effort to mislead the Court. It certainly does not establish bad faith or irrationality in the Trustee's decision-making.

14. Finally, Edelman Co. cannot allow other aspects of Durst's public smear campaign to go unanswered. As supposed support for its personal attacks on Edelman Co. and Asher Edelman, Durst offers its own now-dismissed pleadings in the New York actions. But those pleadings, like Respondent's Response, are nothing more than a transparent effort by Durst to drag Edelman's name through the mud. Durst's New York pleadings were lacking in factual or legal bases when filed and have been dismissed. Similarly improper and distasteful is Durst's extraction of the term "fraudulent scheme" from a complaint in an unrelated (and now settled) federal action against Edelman. Respondent's Objection ¶ 2. Again, Durst's only purpose in including this quote is to denigrate Edelman in public filings.[8]

---

[8] From the outset of the parties' dispute, Durst's New York counsel has

15. In conclusion, Durst has failed to offer any reason to depart from the Trustee's recommendations in the Plan. Edelman therefore respectfully requests that the Court overrule Respondent's Objections and approve the Trustee's Plan subject to the modifications requested herein and in Petitioner's Objections to the Plan.

WHEREFORE, for the reasons set forth above and in Petitioner's Objection, Edelman Co. respectfully requests that the Court:

(a) direct the Trustee to (i) correct or withdraw the various unsupported opinions and assumptions in the Plan (addressed in Petitioner's Objections), (ii) use the Company's cash on hand to satisfy the SBA Loan, (iii) promptly sell the Company's artwork, (iv) pay all of the Company's outstanding liabilities, including amounts owed to the various law firms and Edelman Co.'s indemnity and reimbursement claims, (v) pay Durst any remaining amounts in exchange for the assignment of Durst's membership interest to Edelman Co., and (vi) turn over the Litigation to Edelman Co.,

---

threatened to use the litigation privilege to publicly disparage Edelman Co. and Asher Edelman. Durst's New York pleadings – which Durst proudly attached as an exhibit to Respondent's Answer – transparently reveal this improper strategy, as does Respondent's Objection and Durst's other filings in this action *See, e.g.* Dkt. 6 (Durst's Answer to Petition for Dissolution).

(b) overrule and reject each and every objection to the Plan raised by Durst in Respondent's Objections, and

(c) grant such other and further relief as is just and proper.

Dated: March 8, 2022 **BERGER HARRIS LLP**

*/s/ Richard I. G. Jones, Jr.*
Richard I. G. Jones, Jr. (No. 3301)
David B. Anthony (No. 5452)
1105 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 655-1140
Facsimile: (302) 655-1131
rjones@bergerharris.com
danthony@bergerharris.com

*Attorneys for Petitioner*
(Words: 2,200)